**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| STEVEN ELLIOTT BROWN, | Civil Action No.: 1:26-cv-1787 |
| *Plaintiff,* | |
| v. | **COMPLAINT** |
| WELLS FARGO BANK, N.A. and TRANS UNION, LLC, | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

Plaintiff Steven Elliott Brown ("Plaintiff" or "Mr. Brown"), by and through his undersigned

counsel, for his Complaint against Defendants Wells Fargo Bank, N.A. and Trans Union, LLC,

alleges as follows:

**PRELIMINARY STATEMENT**

1.      Plaintiff brings this action against Defendant Trans Union, LLC ("Trans Union"),

a consumer reporting agency, and Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), a

furnisher of information to consumer reporting agencies, for violations of the Fair Credit

Reporting Act, 15 U.S.C. § 1681 et seq. (the "FCRA").

2.      Mr. Brown is a victim of identity theft. In December 2023, Mr. Brown

accidentally left his credit cards at a restaurant, and shortly thereafter discovered that

unauthorized transactions had been made on several of his personal credit accounts, including a

Bilt-branded credit card issued by Wells Fargo ending in 8891 (the "Account").

3.      Mr. Brown did everything a responsible consumer could do: he disputed the

unauthorized charges with his card issuers, filed complaints with the Office of the Texas

Attorney General, the Office of the Comptroller of the Currency, and the Federal Trade

Commission, filed a police report with the Williamson County Sheriff's Office, and repeatedly

disputed the resulting inaccurate credit reporting with Trans Union, providing extensive supporting documentation.

4.     Nevertheless, Wells Fargo charged off the Account based on a balance that included fraudulent charges Mr. Brown did not make, and furnished that inaccurate information to Trans Union. Despite a comprehensive dispute packet submitted by certified mail in March 2026 — including a police report, a notarized affidavit, and correspondence from government regulators — Trans Union failed to correct or delete the inaccurate information and continues to report the Account as a charge-off with a past-due balance of $3,943, without so much as a notation that the account is disputed.

5.     By this action, Mr. Brown seeks actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs arising from Defendants' willful — or, in the alternative, negligent — violations of the FCRA.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p. The Court may grant declaratory relief pursuant to 28 U.S.C. § 2201.

7.     Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District and Division, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and Defendants regularly conduct business in this District.

## PARTIES

8.     Plaintiff Steven Elliott Brown is a natural person residing in Round Rock, Williamson County, Texas. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

9. Defendant Trans Union, LLC ("Trans Union") is a Delaware limited liability company engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports. Trans Union is a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(f)).

10. Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is a national banking association organized under the laws of the United States with its main office in Sioux Falls, South Dakota. Wells Fargo issues consumer credit cards, including the Bilt-branded credit card at issue in this action, and regularly furnishes information concerning consumers to consumer reporting agencies, including Trans Union. Wells Fargo is a "furnisher of information" within the meaning of 15 U.S.C. § 1681s-2.

## FACTUAL ALLEGATIONS

**A.    Background: The Identity Theft**

11. In December 2023, Mr. Brown accidentally left his credit cards at a Wendy's restaurant.

12. At that time, Mr. Brown had four personal credit cards: two Visa credit cards issued by Credit One Bank (ending in 4707 and 4447); one personal credit card issued by Wells Fargo; and the Account, a Bilt-branded credit card issued by Wells Fargo ending in 8891.

13. Shortly after leaving his cards at the restaurant, Mr. Brown discovered that unauthorized transactions had been made on all four accounts.

14. Unauthorized charges of $1,654.28 were made on the Credit One Bank account ending in 4707, and unauthorized charges of $852.70 were made on the Credit One Bank account ending in 4447. Neither Credit One account carried any balance before the fraudulent activity occurred.

15.     Unauthorized charges totaling approximately $3,475.89 were made on the Account.

16.     Mr. Brown did not make, authorize, or benefit from any of the unauthorized charges on any of the four accounts.

17.     Mr. Brown disputed the unauthorized charges with his card issuers. Wells Fargo resolved Mr. Brown's dispute concerning his other Wells Fargo personal credit card in his favor. However, Wells Fargo did not remove the fraudulent charges from the Account.

18.     Mr. Brown continued to make payments on the Account while he disputed the fraudulent charges with Wells Fargo. After approximately two months of unsuccessful attempts to resolve the dispute, Mr. Brown stopped making payments. Mr. Brown made his last payment on the Account on or about July 16, 2024.

19.     Mr. Brown also reported the fraud to government authorities. By letter dated January 4, 2024, the Office of the Texas Attorney General acknowledged receipt of Mr. Brown's complaint regarding Wells Fargo.

20.     By letter dated January 17, 2024, the Office of the Comptroller of the Currency, through its Customer Assistance Group, acknowledged receipt of Mr. Brown's complaint and redirected him to the Consumer Financial Protection Bureau.

21.     Mr. Brown also filed a complaint regarding the fraud with the Federal Trade Commission.

22.     On April 3, 2024, Mr. Brown filed a police report concerning the fraudulent activity with the Williamson County Sheriff's Office. The report was assigned Case No. 2024-04-00136 and documents the offense of credit card or debit card abuse under Texas Penal Code § 32.31.

4

23.     On or about November 19, 2024, the charged-off balance on one of the fraudulent Credit One Bank accounts was sold to Midland Credit Management, Inc. ("MCM"). MCM sent Mr. Brown collection letters dated November 26, 2024 (seeking $1,654.28), January 15, 2025, and January 16, 2025.

24.     By letter dated March 10, 2025, after reviewing the police report provided by Mr. Brown's counsel, MCM confirmed that the account had been closed, that no further collection activity would occur, that it had instructed all three national consumer reporting agencies to delete its collection tradeline, and that Mr. Brown has no obligation on the account.

25.     The Credit One Bank accounts no longer appear on Mr. Brown's Trans Union credit report. The Wells Fargo Account does.

**B.      The Inaccurate Information**

26.     Notwithstanding Mr. Brown's disputes, Wells Fargo continued to treat the fraudulent charges on the Account as amounts owed by Mr. Brown. By notice dated November 16, 2024, Wells Fargo issued a Notice of Intent to Accelerate stating that the Account ending in 8891 was in default and that $409.00 was due by December 11, 2024.

27.     Wells Fargo thereafter closed the Account and charged it off, and furnished information to Trans Union reporting the account as a charge-off with a balance — inclusive of the unauthorized charges — of $3,943.

28.     As of Mr. Brown's most recent Trans Union credit report, dated May 13, 2026, Trans Union reports the Account under the trade name "WELLS FARGO CARD SERV" as follows: date opened September 12, 2023; pay status ">Charge-off<"; balance $3,943; past due $3,943; last payment made July 16, 2024; date closed November 21, 2024; date updated April 21, 2026; and scheduled to remain on Mr. Brown's credit report until July 2031.

29.     This reporting is inaccurate. The reported balance, past-due amount, and charge-off status derive from unauthorized charges that Mr. Brown did not make, authorize, or benefit from, and that Mr. Brown is not legally obligated to pay. The Account should not be reported as a charge-off with a $3,943 past-due balance.

30.     Mr. Brown's Trans Union credit report contains no notation that the Account is disputed by Mr. Brown, and no consumer statement appears on the tradeline.

31.     The Wells Fargo Account tradeline is the only derogatory tradeline on Mr. Brown's Trans Union credit report. Every other account on his report is reported as current or paid as agreed, and his report contains no public records, collection accounts, or other adverse items.

## C.     Plaintiff's Disputes to Trans Union

*Trans Union*

32.     By dispute letter dated March 10, 2026 and mailed on or about March 18, 2026 by certified mail, return receipt requested, Mr. Brown disputed the Wells Fargo tradeline with Trans Union. Mr. Brown's dispute letter identified the Account as it appears on his March 6, 2026 Trans Union credit report, explained that the delinquency and charge-off status were the direct result of fraudulent and unauthorized transactions that Mr. Brown did not make, authorize, or benefit from, and requested, pursuant to 15 U.S.C. § 1681i, that Trans Union investigate and correct or delete the inaccurate charge-off information.

33.     Mr. Brown's March 10, 2026 dispute packet to Trans Union included: a copy of his March 6, 2026 Trans Union credit report with the disputed account identified; the police report; the Texas Attorney General's acknowledgment letter dated January 4, 2024; the OCC's acknowledgment letter dated January 17, 2024; copies of his government-issued photo identification and Social Security card; and his notarized affidavit, sworn under penalty of

6

perjury, stating that he did not make, authorize, or benefit from the unauthorized transactions on the Account.

34.     Trans Union received Mr. Brown's March 10, 2026 dispute.

35.     Trans Union failed to investigate, correct, or delete the inaccurate Wells Fargo tradeline in response to Mr. Brown's dispute. As reflected on Mr. Brown's Trans Union credit report dated May 13, 2026, Trans Union continues to report the Account as a charge-off with a $3,943 past-due balance, updated as recently as April 21, 2026, and without any notation that the account is disputed.

**D.     Wells Fargo's Conduct as Furnisher**

36.     Upon information and belief, upon receiving Mr. Brown's dispute(s), Trans Union notified Wells Fargo of the dispute(s) pursuant to 15 U.S.C. § 1681i(a)(2).

37.     Upon receiving notice of Mr. Brown's dispute(s) from Trans Union, Wells Fargo was required by 15 U.S.C. § 1681s-2(b) to conduct a reasonable investigation of the disputed information, to review all relevant information provided by Trans Union, to report the results of its investigation to Trans Union, and, if the information was incomplete, inaccurate, or could not be verified, to modify, delete, or permanently block the reporting of that information.

38.     Wells Fargo failed to conduct a reasonable investigation. Instead, by letter dated April 13, 2026, Wells Fargo informed Mr. Brown that it had researched his account, found that "the information is accurate," and completed its investigation of his dispute. A reasonable investigation — including a review of Mr. Brown's fraud claims, the police report, his payment history, and his correspondence — would have revealed that the disputed charges were unauthorized and that the reported balance and charge-off status were inaccurate.

39.     Mr. Brown also disputed the fraudulent charges directly with Wells Fargo over a period of approximately two months in 2024, without success.

7

40.     By dispute letter dated March 10, 2026, sent via certified mail, Mr. Brown also disputed the inaccurate reporting directly with Wells Fargo Card Services, enclosing the same supporting documentation and notarized affidavit included in his Trans Union dispute packet. Wells Fargo was also copied on Mr. Brown's March 10, 2026 dispute letter to Trans Union. Plaintiff alleges these direct disputes as background and as evidence of Wells Fargo's knowledge of the fraud; Plaintiff's furnisher claim in Count II is asserted solely under 15 U.S.C. § 1681s-2(b), the duties of which arise only after a furnisher receives notice of a dispute from a consumer reporting agency.

41.     Wells Fargo has continued to furnish the inaccurate information to Trans Union, updating the tradeline as recently as April 21, 2026.

## E.     Damages

42.     During the relevant period, Trans Union published and disseminated one or more consumer reports containing the inaccurate Wells Fargo charge-off tradeline to third parties, including creditors and prospective creditors to whom Mr. Brown had applied for credit.

43.     As a direct and proximate result of Trans Union's publication of the inaccurate information to these third parties, Mr. Brown was denied credit and/or extended credit on less favorable terms, and suffered concrete injury, including the dissemination of false information about him to third parties, denial of credit, and injury to his creditworthiness and reputation. This publication of inaccurate information to third parties satisfies the reporting element of 15 U.S.C. § 1681e(b) and constitutes a concrete and particularized injury sufficient to confer Article III standing.

44.     As a direct and proximate result of Defendants' conduct, Mr. Brown has suffered actual damages, including denials of credit applications, higher interest rates and less favorable credit terms, and damage to his credit score and credit reputation.

45.    Because the Wells Fargo Account tradeline is the only derogatory item on Mr. Brown's Trans Union credit report, the harm to Mr. Brown's creditworthiness during the relevant period is directly traceable to the inaccurate reporting at issue in this action.

46.    Mr. Brown has also suffered emotional distress as a result of Defendants' conduct, including anxiety, frustration, embarrassment, anger, and aggravation.

47.    Mr. Brown's damages are ongoing and will continue for so long as Defendants continue to report and furnish the inaccurate information.

## COUNT I
### VIOLATION OF THE FCRA, 15 U.S.C. §§ 1681e(b) AND 1681i
### (AGAINST DEFENDANT TRANS UNION)

48.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

49.    Trans Union prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced consumer reports regarding Plaintiff within the meaning of 15 U.S.C. § 1681a(d), which contained inaccurate information about the Wells Fargo Account.

50.    Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it published and maintained concerning Plaintiff.

51.    Trans Union violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and to record the current status of the disputed information or delete the item from Plaintiff's credit file.

52.    Trans Union violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff with respect to his dispute.

53. Trans Union violated 15 U.S.C. § 1681i(a)(5) by failing to promptly delete the disputed inaccurate information from Plaintiff's credit file or to modify the information based upon the results of a reasonable reinvestigation.

54. Trans Union committed the foregoing violations in connection with Plaintiff's March 10, 2026 dispute.

55. As a direct and proximate result of Trans Union's violations, Plaintiff has suffered actual damages, including damage to his credit score and credit reputation, denials of credit, less favorable credit terms, and emotional distress, including anxiety, frustration, embarrassment, and aggravation.

56. Trans Union's violations were willful, rendering Trans Union liable to Plaintiff for actual damages, statutory damages of not less than $100 and not more than $1,000, punitive damages, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

57. In the alternative, Trans Union's violations were negligent, rendering Trans Union liable to Plaintiff for actual damages and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT II**
**VIOLATION OF THE FCRA, 15 U.S.C. § 1681s-2(b)**
**(AGAINST DEFENDANT WELLS FARGO)**

58. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

59. In enacting the FCRA, Congress found that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy," 15 U.S.C. § 1681(a)(4), and stated its purpose to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of

commerce for consumer credit information in a manner which is fair and equitable to the consumer, 15 U.S.C. § 1681(b).

60.    Upon information and belief, Trans Union notified Wells Fargo of Plaintiff's dispute(s) pursuant to 15 U.S.C. § 1681i(a)(2), triggering Wells Fargo's duties under 15 U.S.C. § 1681s-2(b).

61.    Wells Fargo violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to conduct a reasonable investigation with respect to the disputed information.

62.    Wells Fargo violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided to it by Trans Union concerning Plaintiff's dispute(s).

63.    Wells Fargo violated 15 U.S.C. § 1681s-2(b)(1)(D) and (E) by failing to report to the consumer reporting agencies that the disputed information was incomplete or inaccurate, and by failing to modify, delete, or permanently block the reporting of information that was inaccurate or could not be verified.

64.    As a direct and proximate result of Wells Fargo's violations, Plaintiff has suffered actual damages, including damage to his credit score and credit reputation, denials of credit, less favorable credit terms, and emotional distress, including anxiety, frustration, embarrassment, and aggravation.

65.    Wells Fargo's violations were willful, rendering Wells Fargo liable to Plaintiff for actual damages, statutory damages of not less than $100 and not more than $1,000, punitive damages, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

66.    In the alternative, Wells Fargo's violations were negligent, rendering Wells Fargo liable to Plaintiff for actual damages and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681o.

## COUNT III
## VIOLATION OF THE FCRA, 15 U.S.C. § 1681c-2
## (AGAINST DEFENDANT TRANS UNION)

67.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

68.     The inaccurate information on the Account tradeline resulted from identity theft. In connection with his March 10, 2026 dispute packet, Plaintiff provided Trans Union with an identity theft report (a police report documenting the credit card abuse), proof of his identity (copies of his government-issued photo identification and Social Security card), identified the information on his credit file that resulted from the identity theft, and stated, in a notarized affidavit sworn under penalty of perjury, that such information did not relate to any transaction made by him.

69.     Trans Union violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the information resulting from the identity theft within four business days of receipt of Plaintiff's submission, and by failing to promptly notify the furnisher of such information that the information may be the result of identity theft.

70.     As a direct and proximate result of Trans Union's violations of § 1681c-2, Plaintiff has suffered actual damages as set forth above.

71.     Trans Union's violations were willful, rendering Trans Union liable to Plaintiff for actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n. In the alternative, Trans Union's violations were negligent, rendering Trans Union liable to Plaintiff for actual damages and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681o.

### PRAYER FOR RELIEF

12

WHEREFORE, Plaintiff Steven Elliott Brown seeks judgment in his favor and damages against Defendants:

A.    Awarding Plaintiff actual damages, including damages for emotional distress;

B.    Awarding Plaintiff statutory damages;

C.    Awarding Plaintiff punitive damages;

D.    Awarding Plaintiff reasonable attorneys' fees and costs;

E.    Granting declaratory and injunctive relief as appropriate;

F.    Awarding pre-judgment and post-judgment interest as allowed by law; and

G.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

Dated: July 1, 2026

                    Respectfully submitted,

                    */s/ Daniel Schlanger*
                    Daniel Schlanger
                    *(Pro Hac Vice Application Forthcoming)*
                    Schlanger Law Group, LLP
                    150 Allens Creek Road, Suite 240
                    Rochester, NY 14618
                    T: (212) 500-6114
                    F: (646) 612-7996
                    E: dschlanger@consumerprotection.net

                    *Counsel for Plaintiff*

                    */s/William M. Clanton*
                    William M. Clanton
                    Texas Bar No. 24049436

                    Law Office of Bill Clanton, P.C.
                    926 Chulie Drive

San Antonio, Texas 78216
Phone: (210) 226-0800
Fax: (210) 338-8660
Email: bill@clantonlawoffice.com

*Local Counsel for Plaintiff*